IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LISA E. STRZYKALSKI, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BOARD OF EDUCATION OF | ) | |
| SUMMIT HILL SCHOOL DISTRICT | ) | Jury Trial Demanded |
| 161, Principal Laura C. Goebel and | ) | |
| Superintendent Paul McDermott | ) | |
| | ) | |
| Defendants, | ) | |

## COMPLAINT

NOW COMES the Plaintiff LISA E. STRZYKALSKI by and through her attorney James C. Vlahakis, and asserts the following claims against the above-named Defendants:

### Introduction & Parties

1. Plaintiff is a citizen of the State of Illinois and resides in this Judicial District.

2. Plaintiff is a teacher who has been retaliated against for reporting a claim of sexual harassment and misconduct that was reported in her presence.

3. During a portion of the events detailed below, Plaintiff was a teacher at Summit Junior High School, which is part of SUMMIT HILL SCHOOL DISTRICT 161.

4. Defendants Principal Laura C. Goebel and Superintendent Paul McDermott reside in this judicial district.

5. SUMMIT HILL SCHOOL DISTRICT 161 is located within this judicial district and it is the recipient of federal funds.

6. Summit Junior High School is also the recipient of federal funds.

1

7. Defendant BOARD OF EDUCATION OF SUMMIT HILL SCHOOL DISTRICT 161 (hereafter "SUMMIT HILL SCHOOL DISTRICT 161") is a legal entity that conducts school business within this judicial district.

8. Further, Defendants Goebel and McDermott are the beneficiaries, fiduciaries and custodians of federal funds received by Summit Junior High School.

9. Plaintiff brings this civil action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). Title IX provides that no person, on the basis of sex, shall be excluded from participation or denied the benefits of or be subjected to discrimination in any educational program or activity by a recipient of federal funds.

10. Title IX broadly protects *individuals* (not just students) from being subjected to retaliation. *See, Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-74 (1979). *See also, T.S. by & through T.M.S. v. Heart of CarDon, LLC*, 43 F.4th 737 (7th Cir. 2022).

11. Section 1557's prohibition on discrimination was not, "by its own terms, limited to the discrete portion of a covered entity that receives federal financial assistance, the right to sue under section 1557 is not limited to plaintiffs who are intended to benefit from that assistance." *Id.* at 744.

12. Title IX "broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex.'" 544 U.S. at 173 (quoting 20 U.S.C. § 1681). The Supreme Court has also found that Title IX's use of the term "discrimination" "covers a wide range of intentional unequal treatment," illustrated Congress' intent to "g[ive] the statute a broad reach." *Id.* at 175.

13. Thus, the Supreme Court has explained that "the text of Title IX prohibits a funding recipient from retaliating against a person who speaks out against sex

2

discrimination, because such retaliation is intentional 'discrimination' 'on the basis of sex.'" *Id.* At 178.

14. The protections of Title IX apply to any "person" rather than simply to "students" or "beneficiaries" of federal funds. *See, N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 521 (1982). The Supreme Court has held that Title IX's "objective" of effective protection against discriminatory practices would be "difficult, if not impossible, to achieve if persons who complain about sex discrimination did not have effective protection against retaliation." *Id.* (internal quotation marks and citation omitted). According to the Court, "[r]eporting incidents of discrimination is integral to Title IX enforcement and would be discouraged if retaliation against those who report went unpunished. Indeed, if retaliation were not prohibited, Title IX's enforcement scheme would unravel." *Id.*

15. The dual purpose of Title IX is to prohibit a funding recipient from (1) subjecting any person to "discrimination" or "retaliation "on the basis of sex" and (2) providing individual citizens with broad and comprehensive protection against discriminatory practices. *Jackson,* 544 U.S. at 173, 180. S*ee also, Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) ("Congress enacted Title IX in 1972 with two principal objectives in mind: '[T]o avoid the use of federal resources to support discriminatory practices' and 'to provide individual citizens effective protection against those practices.'") (citation omitted). In summary, the Supreme Court has instructed that in order "to give Title IX the scope that its origins dictate, [courts] must accord it a sweep as broad as its language." *N. Haven*, 456 U.S. at 521 (internal quotation marks omitted) (collecting cases).

16. The protections of Title IX protect education officials (teachers and professors) who are retaliated against after they report instances of sexual mistreatment of students:

3

> Based on the Seventh Circuit's framework in T.S., the Court finds that Plaintiffs' allegations bring Count I within Title IX's zone of interests. Plaintiffs allege that after reporting instances where women were being abused to DePaul—including that student-athletes were being called gendered epithets, that a student-athlete was having a sexual relationship with a coach, and that a student had been sexually assaulted—DePaul retaliated against Plaintiffs by reducing patient referrals and ultimately terminating its relationship with Plaintiffs. SAC ¶¶ 50, 65, 71. Thus, the interests claimed by Plaintiffs mirror Title IX's principal objectives: providing citizens protection against discriminatory practices, which includes effective protection against retaliation. These interests are arguably protected by Title IX and therefore fall within Title IX's zone of interests.

*See, e.g., Conviser v. Depaul Univ.*, 2023 U.S. Dist. LEXIS 3344, *23 (Jan. 9, 2023) (citing *T.S. by & through T.M.S. v. Heart of CarDon, LLC*, 43 F.4th 737 (7th Cir. 2022)).

### Jurisdiction

17. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws and treaties of the United States.

18. Plaintiff also brings this civil action pursuant to 42 USC 1983 which prohibits the violation of a person's civil rights by persons or municipality's acting under color of law;

19. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, or any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

20. The statute of limitations for filing a IX action is two years from the injuries suffered by Plaintiff. *See, Doe v. Howe Mil. Sch.*, 227 F.3d 981, 988-89 (7th Cir. 2000);

*Singleton v. Chicago Sch. Reform Bd. of Trs. of Bd. of Educ. of City of Chicago*, 2000 U.S. Dist. LEXIS 8484, 2000 WL 777925, at *19 (N.D. Ill. June 13, 2000).

## Venue

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside in this Judicial District and the events giving rise to the claims occurred in this district.

## Facts Demonstrating Defendants' Unlawful Conduct

22. On October 28, 2021, Plaintiff overheard a female middle school student ("J.A.") complain about being sexually assaulted and sexually harassed by a male student.

23. The alleged abuser is the son of Defendant Goebel, who was the Principal of Summit Junior High School.

24. When the allegations of sexual misconduct and abuse were overheard by Plaintiff, Defendant Goebel was Plaintiff's supervisor.

25. Plaintiff immediately discussed what she overheard with Jodi Canter, a fellow teacher, who had also heard the same accusation from J.A. In this conversation, Ms. Canter confirmed that J.A. made the same accusation in her presence.

26. Ms. Canter informed Plaintiff that she was fearful that reporting J.A.'s accusation to DHS would lead to negative repercussions where the accused abuser was the son of Defendant Goebel.

27. Ms. Canter's conduct caused Plaintiff to briefly question whether Plaintiff needed to immediately report J.A.'s accusations to DCFS.

28. text message and email, Dan Mercer, Plaintiff's Union Field Service Representative told Plaintiff that she should immediately report J.A.'s accusation to DCFS. Thereafter, Plaintiff reported J.A.'s accusations to the Illinois Department of Human Services ("DCFS") on October 30, 2021.

29. When Defendant Goebel learned that Plaintiff had J.A.'s accusations reported to DCFS, Defendant Goebel became enraged.

30. Thereafter, pursuant to DCFS's apparent policy, DCFS temporarily removed the son of Defendant Goebel from his home.

31. On information and belief, this action took place because DCFS had a policy or practice which caused DCFS to be concerned about the safety of Defendant Goebel's daughter and was not directly caused by anything Plaintiff reported to DCFS.

32. Defendant McDermott improperly disclosed to Defendant Goebel that Plaintiff was the mandated reporter of the allegations reported by J.A.

33. Upon learning that J.A.'s accusations had apparently caused DCFS to remove Defendant Goebel's son from the family home, Gobel became further enraged at Plaintiff.

34. After Defendant Goebel learned that Plaintiff reported J.A.'s accusations to DCFS, Goebel began to orchestrate a campaign of retaliation against Plaintiff, which was joined by Defendant McDermott and condoned by Defendant Summit Hill School District 161.

35. For example, as a direct result of Plaintiff's reporting of the incident reported J.A., Defendants Goebel and McDermott prepared, approved and issued a retaliatory report which lied about and grossly mischaracterized the nature and manner of Plaintiff's response to J.A.'s accusations.

36. As a direct result of (a) Plaintiff reporting of the incident reported J.A. and (b) Plaintiff appealing her proposed suspension, Defendant Goebel wrote a three-page letter on Summit Hill School District 161 letterhead where Defendant Goebel purposefully misrepresented and mischaracterized comments from students that were improperly attributed to Plaintiff. This letter is dated November 12, 2021.

37. Further, Defendant Goebel's November 12, 2021, letter attempted to drive a wedge between Plaintiff and J.A. (as well as the parents of J.A.) where Goebel mischaracterized conversations between Plaintiff, J.A. and J.A.'s parents. The November 12, 2021, letter is now part of Plaintiffs' record.

38. In particular, for the purposes of retaliating against Plaintiff, Defendant Goebel interviewed or caused the students to be interviewed in this manner to cause negative reports to be lodged in Plaintiff's records.

39. The report, dated February 28, 2022, was issued on Defendant Summit Hill School District 161 and was signed by Defendant McDermott.

40. Defendant Summit Hill School District 161 approved, sanctioned and otherwise authorized the issuance of the February 28, 2022, letter.

41. This letter is now part of Plaintiffs' record.

42. In retaliation for Plaintiff reporting the accusations of J.A., Defendants collectively sought to suspend Plaintiff for five (5) days without pay.

43. Plaintiff, in conjunction with her Union, AFT Local 604, filed a Grievance in response to the proposed suspension.

44. Ultimately, Defendant Summit Hill School District 161 unlawfully punished Plaintiff with a one-day suspension without pay.

45. Defendant McDermott denied Plaintiff's appeal that was filed by her Union, AFT Local 604.

46. Defendant McDermott denied Plaintiff's appeal injunction with the support and urging of Defendant Goebel. This constitutes a further act of retaliation by both Defendants.

47. Thereafter, Plaintiff, in conjunction with her Union, AFT Local 604, filed a Board Level Grievance, which was denied by Defendant Summit Hill School District 161.

48. Defendant Summit Hill School District 161 denied this grievance and did so at the behest of Defendants Goebel and McDermott – in a further, collective act of retaliation.

49. In addition to the above acts of retaliation, Defendant Goebel submitted false and retaliatory complaints to Summit Hill School District 161 in December of 2021 and January 4, 2022.

50. Defendant Goebel took the above actions for the sole purpose of retaliating against Plaintiff.

51. Defendant McDermott knew of and condoned Defendant Goebel's above descried conduct.

52. As a direct result of (a) Plaintiff reporting of the incident reported J.A. and (b) Plaintiff appealing her proposed suspension, Defendants Goebel gave Plaintiff a "needs improvement rating" where no similar negative rating had existed.

53. Goebel and McDermott's retaliatory conduct caused Plaintiff to be sent to work at four (4) different elementary schools – Indian Trail School, Arbury Hills School, Frankfort Square School and Dr. Julian Rogus School. This resulted in increased travel time and commuting expenses.

54. This retaliatory transfer caused Plaintiff to lose certain additional compensation in the form of a lunch stipend. Further, Plaintiff had to incur additional expenses in the form of additional childcare costs which she was forced to incur when her retaliatory transfer to four (4) schools (rather than one) forced her to increase change her working hours and commuting times.

55. As a further example of retaliation, in 2022 and 2023, Defendant McDermott attempted to prevent Plaintiff from being nominated for a teacher of the year award by refusing to sign off on her request where he falsely claimed that only one teacher could be nominated at a time. Defendant McDermott's reasoning was incorrect.

56. Additionally, when Plaintiff asked other school officials to sign off on her request, Defendant McDermott attempted to intervene to cause these individual to revoke their support for Plaintiff.

57. Defendant McDermott's conduct was clearly retaliatory because Plaintiff was able to be nominated (contrary to Defendant McDermott's one nomination argument) and Plaintiff received an award that recognized her talents as a teacher.

58. Further, when Defendant McDermott learned that Plaintiff had asked other officials to sign off on her nomination, he wrote letters to reprimand Plaintiff on December 14, 2022 and January 19, 2023. Both letters falsely accused her of insubordination.

59. Both letters are part of Plaintiffs' record.

60. Further, Defendant SUMMIT HILL SCHOOL DISTRICT 161 retaliated against Plaintiff and otherwise violated her rights when it issued a "NOTICE TO REMEDY" dated April 21, 2022, where this document falsely accused Plaintiff of the following alleged misconduct:

> "engag[ing] in unprofessional conduct by filing DCFS reports without a reasonable basis against the son of a superior" and
>
> "fail[ing] to follow Board Policy with respect to reporting a matter to DCFS."

61. In this document, Defendant SUMMIT HILL SCHOOL DISTRICT 161 falsely stated that Plaintiff "filed two DCFS reports against the son of your principal after having met with her and being advised that you were going to be written up for a separate matter." This statement is false to the extent that it suggests that Plaintiff and improper motives for reporting the abuse that she overheard being reported by J.A.

62. Next, Defendant SUMMIT HILL SCHOOL DISTRICT 161 falsely accused Plaintiff of waiting too long to report the alleged abuse, claiming that her conduct was "unprofessional and totally unacceptable."

63. Further, Defendant SUMMIT HILL SCHOOL DISTRICT 161 unlawfully retailed against Plaintiff and threated to bring charges against Plaintiff and terminate her where it wrote that "the Board has determined that these deficiencies to be causes, charges, reasons, and defects that, if not removed, may result in charge against you and your dismissal as a teacher in this School District."

64. Finally, Defendant SUMMIT HILL SCHOOL DISTRICT 161 unlawfully retailed against Plaintiff by passing a "RESOLUTION AUTHORIZING NOTICE TO REMEDY TO LISA STRZYKALSKI" ("NOTICE") where it wrote that it "finds and determines that such reports and evidence state causes, charges, reasons, and defects in the conduct of Lisa Strychalski which, if not removed, are causes, charges, reason, and defects warranting the discharge and dismissal of Lisa Strychalski as a teacher in this School District".

65. The NOTICE goes on to state that "the Board finds and determines that the conduct of Lisa Strychalski to dates in this district have been deficient and unsatisfactory".

66. As a result of this retaliatory conduct, Plaintiff has suffered reputational harm, severe emotional distress, decreased compensation and additional (unnecessary) expenses in the form of travel and commuting expenses.

67. Plaintiff has also had to hire a lawyer to vindicate her rights and protect and preserve her reputation.

## Causes of Action

### Count I – Violations of Title IX

68. Plaintiff reasserts and realleges the above allegations as if fully set forth in this Count.

69. A recipient of federal funds retaliates against a person in violation of Title IX when (1) the person "engage[s] in a statutorily protected activity"; (2) the school

"t[akes] a materially adverse action against" the person; and (3) "there exist[s] a but for causal connection between the two." *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017) (citations omitted).

70. Reporting allegations of sexual assault (rather than burying the allegations) involved a matter of public concern and was mandated by DCFS regulations and state law, including, but not limited to the Abused and Neglected Child Reporting Act, 325 ILCS 5/1, *et seq.* ("ANCRA") where Plaintiff was a mandatory reporter as defined by Section 4(a)(4) of the ANCRA.

71. As set forth above, Plaintiff engaged in a protected activity when she reported to DCFS and school officials and J.A. had claimed to have been sexually assaulted *See, e.g.*, *Conviser v. Depaul Univ.*, 2023 U.S. Dist. LEXIS 3344, *42 (Jan. 9, 2023); *Weeks v. Kansas*, 503 F. App'x 640, 642 (10th Cir. 2012) (noting a worker engages in protected activity when she "actively assist[s] other employees in asserting [Title VII] rights"); *Condiff v. Hart Cty. Sch. Dist.*, 770 F. Supp. 2d 876, 883 (W.D. Ky. 2011) (holding that, because "Plaintiff was involved in the opposition of the sexual harassment including the decision to contact school officials[,] . . . she engaged in protected activity"). *See also O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011) (noting that protected activity involves "some step in opposition to a form of discrimination that the statute prohibits").

72. Additionally, Defendant Summit Hill School District 161 exercised final policymaking authority in relation to the above-described actions of retaliation committed by itself and Defendants Goebel and McDermott.

73. Further, as set forth by the NOTICE issued by Defendant Summit Hill School District 161, Defendant Summit Hill School District 161 violated public policy by unlawfully retaliating against Plaintiff for her role as a mandatory reporter.

74. As set forth above, Plaintiff suffered from various forms of retaliation and suffered damages as a result of the above-mentioned retaliatory mistreatment.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter a judgment in her favor and against the Defendants, and award Plaintiff costs and reasonable attorney's fees.

### Count II – Violations of the Illinois Law

75. Plaintiff reasserts and realleges the above allegations as if fully set forth in this Count.

76. Plaintiff is a mandatory reporter as defined by Section 4(a)(4) of the ANCRA.

77. Section Sec. 9.1 of the ANCRA prohibits employers from discriminating against employees who report good faith reports of suspected child abuse or neglect:

> No employer shall discharge, demote or suspend, or threaten to discharge, demote or suspend, or in any manner discriminate against any employee who makes any good faith oral or written report of suspected child abuse or neglect, or who is or will be a witness or testify in any investigation or proceeding concerning a report of suspected child abuse or neglect.

78. As set forth above, Defendants violated Section 9.1 of the ANCRA by retaliating against Plaintiff for reporting the abuse allegedly suffered by J.A.

79. Section 11 of the ANCRA prohibits the disclosure of "reports of child abuse and neglect or records concerning referrals under this Act".

80. In full, Section 11 states as follows:

> All records concerning reports of child abuse and neglect or records concerning referrals under this Act and all records generated as a result of such reports or referrals, shall be confidential and shall not be disclosed except as specifically authorized by this Act or other applicable law. It is a Class A misdemeanor to permit, assist, or encourage the unauthorized release of any information contained in such reports, referrals or records.

81. As set forth above, Defendants violated Section 11 of the ANCRA by disclosing the documentation related to Plaintiff's reporting to DCFS of the abuse allegedly suffered by J.A.

82. Section 11.2 of the ANCRA authorized Plaintiff, as a mandatory reporter, to follow up with DCFS to learn the status of its investigation into the abuse allegedly suffered by J.A.

83. In full, Section 11.2 states as follows:

> A mandated reporting source as provided in Section 4 of this Act may receive appropriate information about the findings and actions taken by the Child Protective Service Unit in response to its report. The information shall include the actions taken by the Child Protective Service Unit to ensure a child's safety.

84. Accordingly, it was unlawful for Defendants to take retaliatory action against Plaintiff where Defendants criticized and thereafter punished Plaintiff for following up with DCFS on or about December of 2021.

85. Section 11.3 of the ANCRA states as follows:

> A person given access to the names or other information identifying the subjects of the report, except the subject of the report, shall not make public such identifying information unless he is a State's attorney or other law enforcement official and the purpose is to initiate court action. Violation of this Section is a Class A misdemeanor.

86. As set forth above, Defendants violated Section 11.3 of the ANCRA by publicly disclosing that Plaintiff reported to DCFS the abuse allegedly suffered by J.A.

87. Section 10 of Illinois Whistleblower Act ("IWA"), 740 ILCS 174, et seq. prohibits the employer from enforcing any rule, regulation or policy preventing an employee from disclosing information to a government agency that the employee reasonably believes discloses any violation of any federal or state law, rule or regulations.

88. Section 15 (a) of the IWA prohibits an employer from retaliating against an employee who discloses information at any proceeding that the employee reasonably believes is a violation of any federal or state law, rule or regulation.

89. Section 15 (b) of the IWA prohibits an employer from retaliating against an employee who discloses information to a government agency that the employee reasonably believes is a violation of any federal or state law, rule or regulation.

90. Section 20.1 of the IWA makes it unlawful for officials to take materially adverse against an employee because of the employee's disclosure or attempt to disclose matter of involving a public concern.

91. Here, Plaintiff reported alleged sexual misconduct of a male student against female student.

92. In doing so, Plaintiff acted in furtherance of sound public policy.

93. In response to and in retaliation for Plaintiff's speaking out on these matters of public concern, in violation of the IWA, Defendants engaged in the above-described retaliatory conduct.

94. Despite full knowledge of each other's retaliatory conduct and actions, Defendants failed to take any action to stop each other from violating Plaintiff's rights as provided by the IWA.

95. Additionally, Defendant Summit Hill School District 161 exercised final policymaking authority in relation to the above-described actions of retaliation committed by itself and Defendants Goebel and McDermott.

96. Further, ss set forth by the NOTICE issued by Defendant Summit Hill School District 161, Defendant Summit Hill School District 161 violated public policy by unlawfully retaliating against Plaintiff for her role as a mandatory reporter.

97. As set forth above, Plaintiff has suffered damages as a result of the above-mentioned retaliatory mistreatment.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter a judgment in her favor and against the Defendants, and award Plaintiff costs and reasonable attorney's fees.

### Count III – First Amendment Violations

98. Plaintiff reasserts and realleges the above allegations as if fully set forth in this Count.

99. As alleged above, Plaintiff reported alleged sexual misconduct of a male student against female student.

100. In doing so, Plaintiff acted in furtherance of sound public policy.

101. In retaliation for Plaintiff's speaking out on these matters of public concern Defendants engaged in the above-described retaliatory conduct.

102. These acts of retaliation violated Plaintiff's constitutional rights as provided by the First Amendment, where the accusations of J.A. were a matter of public concern and where J.A.s' accusation triggered mandatory reporting.

103. Additionally, Defendant Summit Hill School District 161 exercised final policymaking authority in relation to the above-described actions of retaliation committed by itself and Defendants Goebel and McDermott.

104. Further, as set forth by the NOTICE issued by Defendant Summit Hill School District 161, Defendant Summit Hill School District 161 violated public policy by unlawfully retaliating against Plaintiff for her role as a mandatory reporter.

105. As set forth above, Plaintiff has suffered damages as a result of the above-mentioned retaliatory mistreatment.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter a judgment in her favor and against the Defendants, and award Plaintiff costs and reasonable attorney's fees.

**Count IV – Violations of Section 1986 – Failure to Prevent Retaliation**

106. Plaintiff reasserts and realleges the above allegations as if fully set forth in this Count.

107. As alleged above, Plaintiff reported alleged sexual misconduct of a male student against female student.

108. In doing so, Plaintiff acted in furtherance of sound public policy.

109. In retaliation for Plaintiff's speaking out on these matters of public concern Defendants engaged in the above-described retaliatory conduct.

110. Despite full knowledge of each other's retaliatory conduct and actions, Defendants failed to take any action to stop each other from violating Plaintiff's due process rights.

111. Additionally, Defendant Summit Hill School District 161 exercised final policymaking authority in relation to the above-described actions of retaliation committed by itself and Defendants Goebel and McDermott.

112. In summary, none of the Defendants prevented in unlawful retaliatory acts committed by their co-defendants, despite having the legal authority to prevent such retaliatory acts from occurring.

113. As set forth above, Plaintiff has suffered damages as a result of the above-mentioned retaliatory mistreatment.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter a judgment in her favor and against the Defendants, and award Plaintiff costs and reasonable attorney's fees.

**Count V – Violations of Equal Protection & Class of One Discrimination**

114. Plaintiff reasserts and realleges the above allegations as if fully set forth in this Count.

115. As alleged above, Plaintiff reported alleged sexual misconduct of a male student against female student.

116. In doing so, Plaintiff acted in furtherance of sound public policy.

117. In retaliation for Plaintiff's speaking out on these matters of public concern Defendants engaged in the above-described retaliatory conduct.

118. These acts of retaliation deprived Plaintiff of her rights to due process and equal protection under the laws where other teachers have reported alleged sexual misconduct to DCFS, but the teachers in question were not retaliated against by the Defendants.

119. These acts of retaliation were also taken against Plaintiff in a spiteful manner where she was treated differently from other teachers who reported alleged sexual misconduct by a student (upon a student) where the alleged misconduct was attributed to the son of Defendant Goebel.

120. Plaintiff is aware of other accusations of student based sexual misconduct where these allegations did not result in the reporting teacher suffering the same type of retaliation that she suffered at the hands of Defendants.

121. Because allegations of sexual misconduct involving a student is clearly a matter of public concern, there was *no* rational basis for the manner in which Plaintiff was treated differently.

122. Simply stated, Plaintiff was retaliated against by Defendants because the conduct that she reported involved the son of Defendant Goebel.

123. Additionally, Defendant Summit Hill School District 161 exercised final policymaking authority in relation to the above-described actions of retaliation committed by itself and Defendants Goebel and McDermott.

124. As set forth by the NOTICE issued by Defendant Summit Hill School District 161, Defendant Summit Hill School District 161 violated public policy by unlawfully retaliating against Plaintiff for her role as a mandatory reporter.

125. As set forth above, Plaintiff has suffered damages as a result of the above-mentioned retaliatory mistreatment.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter a judgment in her favor and against the Defendants, and award Plaintiff costs and reasonable attorney's fees.

**Count VI – *Monell* Based Liability Against Summit Hill School District 161**

126. Plaintiff reasserts and realleges the above allegations as if fully set forth in this Count.

127. As alleged above, Plaintiff reported alleged sexual misconduct of a male student against female student.

128. In doing so, Plaintiff acted in furtherance of public policy.

129. In retaliation for Plaintiff's speaking out on these matters of public concern, engaged in and condoned the above-described retaliatory conduct.

130. A school can be liable under Section 1983 when the injuries in question are caused by a person with final policymaking authority." *See, Kujawski v. Bd. of Comm'rs of Bartholomew Cty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999).

131. As set forth above, Defendant Summit Hill School District 161 exercised final policymaking authority in relation to the above-described actions of retaliation committed by itself and Defendants Goebel and McDermott.

132. As set forth by the NOTICE issued by Defendant Summit Hill School District 161, Defendant Summit Hill School District 161 violated public policy by unlawfully retaliating against Plaintiff for her role as a mandatory reporter.

133. As set forth above, Plaintiff has suffered damages as a result of the above-mentioned retaliatory mistreatment.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter a judgment in her favor and against Defendant Summit Hill School District 161, and award Plaintiff costs and reasonable attorney's fees.

**Plaintiff demands a jury trial.**

Respectfully submitted,

/s/ James C. Vlahakis

James C. Vlahakis
**Vlahakis Law Group LLC**
20 N. Clark Street, Suite 3300
Chicago IL 60602
jamesv@vlahakislaw.com
312-766-0511 (office)
312-648-6127 (direct)
312-648-6202 (fax)