UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA STRZYKALSKI, | |
| Plaintiff, | |
| v. | No. 23 CV 1284 |
| BOARD OF EDUCATION OF SUMMIT HILL SCHOOL DISTRICT 161, PRINCIPAL LAURA C. GOEBEL, and SUPERINTENDENT PAUL MCDERMOTT, | Judge Manish S. Shah |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Lisa Strzykalski was a junior high school teacher when she overheard one of her students complain that she was sexually assaulted and sexually harassed by another student. The accused student was the son of defendant Laura C. Goebel, the school's principal. Strzykalski reported the accusations to the Department of Children and Family Services. Subsequently, defendants Goebel, Paul McDermott (the district superintendent), and the school district board disciplined Strzykalski for reporting to DCFS. Strzykalski brought this case with claims under Title IX, the Illinois Whistleblower Act, *Monell* liability, and respondeat superior. Defendants move to dismiss Strzykalski's whistleblower, *Monell*, and respondeat superior claims.

I.   Facts

Plaintiff Lisa Strzykalski was a teacher at Summit Hill Junior High School, part of Summit Hill School District 161. [20] ¶ 2.[1] Defendant Laura Goebel was principal of Summit Hill and Strzykalski's supervisor. [20] ¶¶ 22, 39, 43.

As a teacher, Strzykalski was required to report to the Department of Children and Family Services when she had reasonable cause to believe a child may be an abused child under the Abused and Neglected Child Reporting Act, 325 ILCS 5/4(a)(4). [20] ¶¶ 24, 30. On October 28, 2021, Strzykalski overheard a student, J.A., complain about being sexually assaulted and sexually harassed by another student. [20] ¶¶ 37–38. Strzykalski immediately discussed J.A.'s accusations with a fellow teacher, who confirmed that J.A. made the same accusations in her presence. [20] ¶¶ 44–45. The other teacher informed Strzykalski that she was scared that reporting J.A.'s accusation to DCFS would lead to negative repercussions because the accused student was Goebel's son. [20] ¶ 46. Strzykalski wondered whether she needed to immediately report the accusations. [20] ¶ 47. Strzykalski's union representative told her by text and email that she should immediately report the accusation to DCFS. [20] ¶ 48. Strzykalski reported the accusations to DCFS on October 30, 2021. [20] ¶ 49.

Defendant Paul McDermott, the superintendent of District 161, informed Goebel that Strzykalski reported J.A.'s accusations against Goebel's son to DCFS.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [1] ¶ 1. The facts are taken from Strzykalski's first amended complaint, [20].

2

[20] ¶ 50. Goebel and McDermott subsequently took multiple allegedly retaliatory actions against Strzykalski, including initiating disciplinary proceedings against Strzykalski, issuing reports that mischaracterized Strzykalski's response to J.A.'s accusations and Strzykalski's conversations with J.A. and J.A.'s parents, interviewing students to lodge negative reports in Strzykalski's record, submitting written complaints to District 161, and hindering Strzykalski's nomination for a teaching award. [20] ¶¶ 56–58, 63–66, 94–96, 102–114.

In February 2022, District 161 issued to Strzykalski a Formal Pre-Suspension Notification signed by McDermott. [20] ¶¶ 67–68. McDermott and Goebel sought to suspend Strzykalski for five days without pay. [20] ¶¶ 72–73. The Board of Education of District 161 voted to suspend Strzykalski for one day without pay. [20] ¶ 78.

Strzykalski's union appealed her suspension. [20] ¶ 79. McDermott denied the appeal. [20] ¶ 80. Strzykalski filed a Board Level Grievance under the applicable collective bargaining agreement. [20] ¶ 83. McDermott and Goebel influenced as least two Board members to deny Strzykalski's grievance. [20] ¶¶ 84–91. The Board denied Strzykalski's grievance. [20] ¶ 92.

Because she reported J.A.'s accusations and appealed her proposed suspension, Strzykalski also received a "needs improvement rating," which she had never received previously. [20] ¶¶ 97–98. Strzykalski was transferred to a position that required her to work at four different elementary schools, which increased her travel time and commuting expenses. [20] ¶ 99. Due to this transfer, Strzykalski lost a lunch stipend and incurred additional childcare costs. [20] ¶¶ 100–101.

3

In April 2022, District 161 issued a Notice to Remedy, accusing Strzykalski of "engag[ing] in unprofessional conduct by filing DCFS reports without a reasonable basis against the son of a superior" and "fail[ing] to follow Board Policy with respect to reporting a matter to DCFS." [20] ¶ 115. The notice stated Strzykalski "filed two DCFS reports against the son of your principal after having met with her and being advised that you were going to be written up for a separate matter." [20] ¶ 117. District 161 also accused Strzykalski of waiting too long to report the alleged abuse, despite Strzykalski reporting J.A.'s accusations within applicable DCFS regulations and guidelines. [20] ¶¶ 120–21. District 161 threatened to bring charges against Strzykalski and terminate her. [20] ¶ 122. District 161 also passed a Resolution Authorizing Notice to Remedy to Lisa Strzykalski, which found Strzykalski's conduct to be deficient and unsatisfactory, and again threatened to terminate Strzykalski's employment. [20] ¶¶ 129–30.

As a result of McDermott, Goebel, and District 161's actions, Strzykalski suffered reputational harm, severe emotional distress, decreased compensation, and additional expenses. [20] ¶ 136. Strzykalski brought this case alleging Title IX, Illinois Whistleblower Act, "*Monell* Liability," and "respondeat superior" claims against Goebel, McDermott, and District 161. [1], [20]. Defendants move to dismiss the whistleblower, *Monell* liability, and respondeat superior claims. [21].

II.  Analysis

When reviewing a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled allegations as true and draws all reasonable inferences in favor of the plaintiff. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). "To survive a

4

motion to dismiss, a plaintiff need allege 'only enough facts to state a claim to relief that is plausible on its face.'" *Barwin v. Vil. of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A. Illinois Whistleblower Act

Strzykalski brings Count II under the Illinois Whistleblower Act, which was enacted to protect employees who report violations of state or federal laws, rules, or regulations from retaliation. *See Larsen v. Provena Hosps.*, 2015 IL App (4th) 140255, ¶ 47. The first part of Count II confusingly focuses on defendants' alleged violation of ANCRA when they publicly revealed that Strzykalski reported to DCFS. [20] ¶¶148–157. These allegations do not state a whistleblower claim. Strzykalski also conflates her whistleblower claim with Title IX in her opposition brief. [29] at 4–6. None of these statutes overlap in the way Strzykalski attempts to use them and they have separate standards.

Strzykalski's whistleblower claim relies on three sections of the statute: 740 ILCS 174/10, 15, and 20.1. [20] ¶¶ 161–63, 166. As an initial matter, defendants argue that there is no individual liability under the act, and therefore Count II against Goebel and McDermott should be dismissed. [22] at 3. Sections 10, 15, and 20.1 prohibit an "employer" from taking certain actions to hinder or retaliate against whistleblowing. 740 ILCS 174/10, 15, 20.1. As amended in 2008, the act defines "employer" to include "any person acting within the scope of his or her authority express or implied on behalf of [previously described] entities in dealing with its employees." 740 ILCS 174/5.

I disagree with defendants and adhere to my interpretation, as stated in *Principe v. Village of Melrose Park*, No. 20 CV 1545, 2020 WL 4815908, at *5–6 (N.D. Ill. Aug. 18, 2020), that an individual acting within the scope of their express or implied authority on behalf of an entity considered to be an employer is subject to liability under the statute. Strzykalski adequately alleges that District 161 is an employer under the act and that Goebel and McDermott were acting within the scope of their express or implied authority on behalf of District 161. *See, e.g.,* [20] ¶¶ 57–61, 63–69, 124–28, 131–135, 174–75.

1. *Section 10*

Section 10 of the Illinois Whistleblower Act prohibits an employer to "make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency if the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/10.

Strzykalski alleges that she "was told and knew" that Goebel wanted school officials to "handle reports of sexual harassment on an 'in-house basis.'" [20] ¶¶ 41–42, 169–70. Strzykalski argues that this instruction to handle allegations of student-on-student sexual harassment "in-house" was intended to subvert the reporting process and to keep reports from the proper outside entities. [29] at 7–8.

Few cases interpret what constitutes a "rule, regulation, or policy" under Section 10. At least two courts in this district suggest that unwritten policies or rules can satisfy Section 10 when the employer practiced, maintained, or enforced an unrecorded policy with the same impact. *See Mercer v. Favorite Healthcare Staffing,*

6

*Inc.*, No. 22-CV-766, 2023 WL 2456371, at *7–8 (N.D. Ill. Mar. 10, 2023); *Diadenko v. Folino*, 890 F.Supp.2d 975, 993 (N.D. Ill. 2012), *aff'd*, 741 F.3d 751 (7th Cir. 2013).

Defendants argue that Strzykalski does not plead the development or enforcement of a rule, regulation, or policy of suppressing mandated reporting under ANCRA. [22] at 5. Defendants assert that District 161 maintained a policy of internal reporting for Title IX consistent with federal law and that employees were required to report sexual harassment or misconduct to the Title IX coordinator. *Id.* This Title IX policy also did not prevent the reporting of allegations of wrongdoing to outside entities. *Id.*; [30] at 4. But the complaint does not allege that Goebel was maintaining or enforcing the District's Title IX policy. Strzykalski alleges that Goebel wanted[2] reports of sexual misconduct and harassment to stay within the school—"as opposed to reporting allegations of sexual misconduct and harassment involving students to DCFS." [20] ¶¶ 41–42, 169–70.

Viewing Strzykalski's allegation in the context set forth in her complaint, Strzykalski has adequately alleged that Goebel maintained an unrecorded rule that was enforced with the same effect as a recorded one. Strzykalski alleges Goebel and McDermott swiftly disciplined her for reporting the allegations to the DCPA instead of internally. *See, e.g.*, [20] ¶¶ 51, 57–58, 61, 68. The alleged retaliation Strzykalski

---

[2] Defendants also argue that Strzykalski failed to allege that Goebel followed through on her desire to stifle external reporting. [22] at 6. But Strzykalski doesn't need to allege Goebel successfully stifled external reporting, only that there was a rule, regulation, or policy that would prevent Stryzkalski from reporting to a government or law enforcement agency. *See* 740 ILCS 1274/10.

7

experienced amounts to the enforcement of Goebel's alleged rule meant to prevent Strzykalski from reporting outside of the school.

While Strzykalski's allegations of Goebel's rule are sparse, Strzykalski has adequately alleged a "rule, regulation or policy preventing" (through fear of reprimand and suspension) employees from disclosing information to a government or law enforcement agency. *See* 740 ILCS 174/10. The alleged rule also covered information that an employee could reasonably believe to disclose a violation of law— allegations of sexual misconduct and harassment. *See* 720 ILCS 5/11-1.20, 1.30 (criminalizing sexual assault); 720 ILCS 5/11-1.50, 1.60 (criminalizing sexual abuse); 720 ILCS 5/12-7.3, 7.4 (criminalizing stalking); 775 ILCS 5/5A-102 (recognizing sexual harassment in school as a civil rights violation). Defendant's motion to dismiss Strzykalski's § 10 claim is denied.

   2.   *Section 15*

Strzykalski cites both § 15(a) and § 15(b) in her whistleblower claim. [20] ¶¶ 162, 163. Section 15(a) prohibits an employer from retaliating against an employee who disclosed information "in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding." 740 ILCS 174/15(a). Strzykalski does not allege that she disclosed information in any such proceedings. Therefore, her § 15(a) claim is dismissed.

Section 15(b) prohibits an employer from "retaliat[ing] against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule or regulation." 740 ILCS 174/15(b). To succeed on a § 15(b)

8

claim, Strzykalski must show (1) an adverse employment action by her employer, (2) which was in retaliation for (3) her disclosure to a government or law enforcement agency (4) of a suspected violation of an Illinois or federal law, rule, or regulation. *Sweeney v. City of Decatur*, 2017 IL App (4th) 160492, ¶ 15 (citing *Taylor v. Bd. of Educ. of the City of Chicago*, 2014 IL App (1st) 123744, ¶ 52). The parties do not contest the first and second elements. Instead, defendants argue that the information Strzykalski disclosed to DCFS—the alleged illegal activity of a third party—is not covered by the act and that Strzykalski did not reasonably believe the information disclosed a violation of law.

Defendants first argue that Strzykalski's "report of the alleged sexual misconduct to DCFS was not related to illegal activities on the part of the District or its employees and is not the sort of 'disclosure of information' that brings her within the protections of Section[] … 15(b)." [22] at 7.[3] The Illinois Supreme Court rejected this argument. *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶¶ 32–34. The act applies to situations in which an employee discloses a possible violation of the law by a third party, rather than only misconduct by their employer. *Id.*

Second, defendants argue that Strzykalski did not reasonably believe that the information she reported disclosed a violation of law. Strzykalski's complaint alleges she was retaliated against for reporting conduct to DCFS as required by ANCRA, [20]

---

[3] Defendants correctly point out that Strzykalski does not allege that she reported Goebel's "in-house" rule to DCFS, but that she reported J.A.'s accusations of assault and harassment. [30] at 6. Therefore, the alleged unlawful rule cannot serve as the basis for any claimed retaliation because Strzykalski never disclosed it. *See Stiles v. Int'l BioResources, LLC*, 726 F.Supp.2d 944, 951 (N.D. Ill. 2010).

¶¶ 158–60, 177–78; her opposition brief suggests she believed the "alleged conduct violated Title IX," [29] at 4. Defendants argue that Strzykalski inappropriately attempts to amend her complaint by now stating the conduct violated Title IX. [30] at 1–2. Defendants are correct that Strzykalski cannot amend her complaint in her response brief. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Thus, I only consider Strzykalski's allegations in her complaint.

Defendants argue that Strzykalski could not have reasonably believed the information disclosed a violation of law because ANCRA's definition of an "abused" or "neglected" child does not encompass one subjected to alleged sexual harassment and misconduct by a classmate. [22] at 8–9 (citing 325 ILCS 5/3). While defendants are correct that J.A.'s allegations do not fall under ANCRA, Strzykalski has adequately alleged that she had a reasonable belief that the information she shared with DCFS disclosed a violation of Illinois law. *See* [20] ¶ 167. Sexual assault and some forms of sexual harassment are criminalized under Illinois state law. 720 ILCS 5/11-1.20, 1.30 (criminalizing sexual assault); 720 ILCS 5/11-1.50, 1.60 (criminalizing sexual abuse); 720 ILCS 5/12-7.3, 7.4 (criminalizing stalking). Sexual harassment in schools is also considered a civil rights violation under the Illinois Human Rights Act. 775 ILCS 5/5A-102. Strzykalski has sufficiently alleged a § 15(b) claim.[4]

---

[4] Defendants also argue Strzykalski's allegations that she had an obligation to report under ANCRA impliedly suggest that her theory is that J.A.'s accusation meets ANCRA's definition of child abuse. [30] at 5. But since J.A.'s statement did not meet ANCRA's definition of child abuse, there could not have been an underlying violation and Strzykalski's theory falls apart, so the argument goes. This detour through ANCRA is a red herring. Section 15(b) of the

   *3.*     *Section 20.1*

Section 20.1 of the whistleblower act prohibits employers from taking materially adverse action against an employee because of the employee's disclosure or attempt to disclose "public corruption or wrongdoing." 740 ILCS 174/20.1. Defendants argue that "public corruption or wrongdoing" does not encompass the alleged sexual misconduct. [22] at 8. Strzykalski argues that "reporting student-on-student sexual harassment and misconduct is one of the most important things a teacher can do" and is "a matter of public concern." [29] at 11.

I agree with defendants. The statute does not define "public corruption or wrongdoing." Unless words are otherwise defined in a statute, "they will be interpreted as taking their ordinary, contemporary, common meaning." *United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) (quotation and internal punctuation omitted). "Corruption" is generally defined as "an act carried out with an intent of giving some advantage inconsistent with official duty and the rights of others." *Corruption*, *Black's Law Dictionary* (11th ed. 2019). Public wrongdoing is akin to official misconduct, generally defined as "[a] public officer's corrupt violation of assigned duties by malfeasance, misfeasance, or nonfeasance." *Official Misconduct*, *Black's Law Dictionary* (11th ed. 2019). "Public corruption or wrongdoing" does not have such a broad meaning as to encompass any suspected violation of law or "matter

---

whistleblower act does not require a whistleblower to believe they are under an obligation to disclose unlawful conduct to authorities, and the sufficiency of Strzykalski's § 15(b) theory does not depend on any belief about her obligation under ANCRA.

of public concern." The alleged sexual misconduct Strzykalski disclosed was not "public corruption or wrongdoing." Strzykalski's § 20.1 claim is dismissed.

### B. *Monell* Liability

"*Monell* liability" is not a cause of action. *Monell* is only implicated when a plaintiff brings a 42 U.S.C. § 1983 claim against a municipality or other local government unit. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Strzykalski does not bring a § 1983 claim. And if she is attempting to do so in Count III, Strzykalski has not sufficiently stated a § 1983 claim.

Section 1983 creates a right of action against persons who violate another's federal rights while acting under color of state law. 42 U.S.C. § 1983; *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 362 (2017) (citing *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). Local government units, like the District 161 Board, are liable for federal-rights violations caused by their employees or agents only "when execution of a government's policy or custom ... inflicts the injury." *Monell*, 436 U.S. at 694; *see Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011). To show that a violation of a federal right was caused by local government action, Strzykalski must allege that an express policy, a widespread practice, or a person with final policymaking authority deprived her of a federal right. *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021).

The parties do not dispute that the Board was a final policymaker under Illinois law. [22] at 10; [29] at 13. Defendants argue that Strzykalski "cannot hold the District liable for any unconstitutional acts of Goebel or McDermott unless they amount to District policy." [22] at 11. But Strzykalski alleges that she was injured by

12

the Board's actions, specifically suspending Strzykalski, denying her Board Level Grievance, and issuing and passing a resolution authorizing the Notice to Remedy. [20] ¶¶ 62, 75–76, 78, 93, 115–23, 129–30, 186–87. "[A] municipality may be liable under § 1983 for a single decision by its properly constituted legislative body … because even a single decision by such a body unquestionably constitutes an act of official government policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

In the end, the issue of whether *Monell* liability can attach to the Board's actions against Strzykalski is inapposite. Strzykalski has failed to allege that she was deprived of a federal right, and that the deprivation was caused by the Board's actions. *See First Midwest Bank*, 988 F.3d at 987 (holding "the first step in every § 1983 claim" is the plaintiff "initially prov[ing] that he was deprived of a federal right."). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Count III is dismissed.

### C. Respondeat Superior Liability

In Count IV of her complaint, Strzykalski brings a claim of respondeat superior against District 161. [20] ¶¶ 189–197. Defendants move to dismiss this count on the basis that respondeat superior is a theory of liability, not an independent cause of action. Defendants are correct—"respondeat superior is not by itself a cause of action" under Illinois law. *See, e.g.*, *Wilson v. Edward Hosp.*, 2012 IL 112898, ¶ 24 ("We conclude that actual agency and apparent agency are not causes of action.") But

13

including it in the complaint suffices to put District 161 on notice that Strzykalski intends to pursue that theory of liability in the event an individual employee is found liable for her claims and acted within the scope of their employment. I do not dismiss this count, but simply clarify that it is not a cause of action.

### III. Conclusion

Defendants' Motion to Dismiss, [21], is granted in part as to Strzykalski's Count II IWA claims under § 15(a) and § 20.1, and Count III. Those claims are dismissed without prejudice.[5] Defendants must answer Strzykalski's Count II IWA claims under § 10 and § 15(b) by February 27, 2024.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: February 13, 2024

---

[5] Ordinarily, a plaintiff should be given at least one opportunity to amend a complaint. *Ryder v. Hyles*, 27 F.4th 1253, 1258 (7th Cir. 2022) (quoting *Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015)).