UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA STRZYKALSKI, <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF EDUCATION OF SUMMIT HILL SCHOOL DISTRICT 161, PRINCIPAL LAURA C. GOEBEL and SUPERINTENDENT PAUL MCDERMOTT, <br><br> Defendants. | No. 23 CV 1284 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lisa Strzykalski was a junior high school teacher and overheard one of her students say that she was sexually assaulted and harassed by another student. Strzykalski reported the accusations to the Department of Children and Family Services. Subsequently, defendants Laura Goebel (the school principal), Paul McDermott (the district superintendent), and the school district board disciplined Strzykalski for reporting to DCFS. Strzykalski brought this case with claims under Title IX, the Illinois Whistleblower Act, and 42 U.S.C. § 1983. After parts of her complaint were dismissed for failure to state a claim, Strzykalski filed a second amended complaint. Defendants move to dismiss Strzykalski's Illinois whistleblower and § 1983 claims.

**I.     Legal Standards**

When reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a court accepts all well-pled allegations as true and draws all reasonable inferences

in favor of the plaintiff. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). "To survive a motion to dismiss, a plaintiff must plead 'only enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. Facts

The facts remain nearly identical to those in the First Amended Complaint. *See Strzykalski v. Bd. of Educ. of Summit Hill Sch. Dist. 161*, No. 23 CV 1284, 2024 WL 580012, at *1–2 (N.D. Ill. Feb. 13, 2024). In brief, plaintiff Lisa Strzykalski was a teacher at Summit Hill Junior High School, part of Summit Hill School District 161. [47] ¶ 2.[1] In October 2021, she overheard a student complain about being sexually assaulted and sexually harassed by another student. [47] ¶¶ 37–38. She reported the allegations to the Department of Children and Family Services, believing that she was obligated to do so under the Abused and Neglected Child Reporting Act, 325 ILCS 5/4(a)(4). [47] ¶¶ 24, 30, 49.

Defendant Laura Goebel was principal of Summit Hill and Strzykalski's supervisor. [47] ¶¶ 22, 39, 43. The accused student was Goebel's son. [47] ¶ 39. Defendant Paul McDermott, the superintendent of District 161, informed Goebel that Strzykalski reported the accusations against Goebel's son to DCFS. [47] ¶ 50.

Goebel, McDermott, and the District 161 Board took allegedly retaliatory actions against Strzykalski, including initiating disciplinary proceedings, issuing

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. When a document has numbered paragraphs, I cite to the paragraph, for example [47] ¶ 1. The facts are taken from Strzykalski's Second Amended Complaint, [47].

2

reports that mischaracterized Strzykalski's response to the accusations, lodging negative student reports in Strzykalski's record, submitting written complaints to District 161, hindering Strzykalski's nomination for a teaching award, suspending her for one day without pay, denying her grievances, giving her low performance ratings, transferring her, issuing a notice to remedy, and threatening to bring charges against her and terminate her. [47] ¶¶ 56–58, 63–99, 102–35.

Strzykalski brought this case alleging Title IX, Illinois Whistleblower Act, "*Monell* Liability," and "respondeat superior" claims against Goebel, McDermott, and District 161. [1], [20]. Her *Monell* and part of her whistleblower claims were dismissed for failure to state a claim. *Strzykalski*, 2024 WL 580012, at *4–6.

McDermott then allegedly retaliated against Strzykalski for filing this lawsuit. [47] ¶¶ 216–17. McDermott prevented Strzykalski from being rehired to a similar teaching position that she held before being demoted for reporting the alleged sexual misconduct. [47] ¶ 218. McDermott instructed those involved in hiring to interview Strzykalski for the position, but not give it to her. [47] ¶¶ 219–22. McDermott failed to inform the Union Executive Board that Strzykalski interviewed for the position. [47] ¶ 226. The hired teachers, who had not sued McDermott, had less experience and lower qualifications than Strzykalski. [47] ¶ 227.

Strzykalski filed a Second Amended Complaint. [47]. Defendants move to dismiss her 740 ILCS 174/15(a) whistleblower, 42 U.S.C § 1983, and "respondeat superior" claims. [50].

3

### III. Analysis

#### A. 42 U.S.C. § 1983

Strzykalski alleges that Summit Hill School District 161 is liable under 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). [47] ¶¶ 179–188. Section 1983 creates a right of action against persons who violate another's federal rights while acting under color of state law. 42 U.S.C. § 1983; *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 362 (2017). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Thus, a § 1983 claim requires that a federal constitutional or statutory injury exists. *See First Midwest Bank Guardian v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021) (holding "the first step in every § 1983 claim" is the plaintiff "initially prov[ing] that he was deprived of a federal right.").

Strzykalski alleges that "District 161's violation of Title IX constitutes a violation of federal and a basis to hold the Defendant [sic]." [47] ¶ 187. She does not name any other federal law or constitutional deprivation as the basis for her claim. *See* [48] ¶¶ 179–188. In her response brief, Strzykalski disclaims that her § 1983 claim is predicated on a Title IX violation. [57] at 3. Instead, she argues that it is based on congruent constitutional violations, in particular District 161's retaliatory acts. [57] at 3–4 (citing [47] ¶¶ 115–20, 183–85). She does not specify which constitutional right these retaliatory acts violated, but cites to *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009), in which the Supreme Court held

4

that a plaintiff may bring an Equal Protection Clause claim under § 1983 alongside a Title IX claim. [57] at 4.

Intentional sex discrimination and sexual harassment against public employees by persons acting under color of state law violate the Equal Protection Clause and are actionable under § 1983. *Locke v. Hassig*, 788 F.3d 662, 667 (7th Cir. 2015). Strzykalski makes no allegations of sex discrimination or sexual harassment directed at her. Instead, she alleges that she was retaliated against for reporting sexual harassment directed at one of her students. [47] ¶¶ 37–38, 49, 56–58, 63–99, 102–35. "[R]etaliating against a person for filing charges of sex discrimination is not the same as discriminating against a person on grounds of sex." *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004). "[T]he right to be free from retaliation may be vindicated under the First Amendment or Title VII,[2] but not the equal protection clause." *Id.*

To the extent Strzykalski's § 1983 retaliation claim is predicated on the First Amendment, it also fails. To establish a First Amendment retaliation, a public employee must show that her speech was constitutionally protected. *Swetlik v. Crawford,* 738 F.3d 818, 825 (7th Cir. 2013). A public employee's speech is only constitutionally protected if the employee made the speech as a private citizen. *Id.*

Strzykalski specifically alleges that her report of the alleged sexual misconduct was made within her scope of duties because teachers are mandatory reporters. *See*

---

[2] A plaintiff may not seek to enforce rights conveyed by Title VII through a § 1983 claim. *Trigg v. Fort Wayne Cmty. Schs.*, 766 F.2d 299, 301 (7th Cir. 1985); *Levin v. Madigan*, 692 F.3d 607, 620 n.4 (7th Cir. 2012).

[47] ¶¶ 24, 30, 47–48, 180. Even if Strzykalski did not have a duty to report, a "public employee's commentary about misconduct affecting an area within her responsibility is considered speech as an employee even where investigating and reporting misconduct is not included in her job description or routine duties." *See McArdle v. Peoria Sch. Dist. No. 150,* 705 F.3d 751, 754 (7th Cir. 2013). "[P]rotection of a government employee's exposure of misconduct involving [her] workplace is more properly provided by whistleblower protection laws and labor codes." *Id.* Strzykalski has failed to state a § 1983 claim based on a First Amendment violation.

Although Strzykalski has disclaimed the theory that her § 1983 claim is solely predicated on Title IX, the complaint can be read this way. Defendants argue that the Supreme Court foreclosed § 1983 claims based on Title IX in *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257–58 (2009), but the Court only held that Title IX doesn't preclude concurrent § 1983 claims based on constitutional violations. The Seventh Circuit Court of Appeals similarly has not specifically addressed whether Title IX precludes actions under § 1983. Most circuits have held that § 1983 claims cannot be based on Title IX violations. *Seamons v. Snow*, 84 F.3d 1226, 1234 n.8 (10th Cir. 1996); *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 176–79 (1st Cir. 2007) (overruled on other grounds); *Bruneau ex rel. Schofield v. South Kortright Cent. Sch. Dist.*, 163 F.3d 749, 756–57 (2d Cir. 1998); *Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779, 789 (3d Cir. 1990); *Lakoski v. James*, 66 F.3d 751, 754–58 (5th Cir. 1995); *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1300 (11th Cir. 2007); *but see Communities for Equity v. Michigan High Sch. Athletic Ass'n*, 459 F.3d

676, 684–86 (6th Cir. 2006) (permitting § 1983 Title IX claims); *Crawford v. Davis*, 109 F.3d 1281, 1284 (8th Cir. 1997) (same).

Evaluating whether relief is available under § 1983 for a statutory deprivation involves two questions: (1) do the statutory provisions "unambiguously confer individual federal rights;" and if so, (2) does the statute itself "nevertheless evince Congress's intent to preclude the use of § 1983 to enforce these particular rights." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 180 (2023). "The existence of a more restrictive private remedy in the statute itself for statutory violations has been the dividing line between those cases in which . . . an action would lie under § 1983 and those in which . . . it would not." *Id.* at 188 (quoting *City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 121 (2005)).

"Title IX explicitly confers a benefit on persons discriminated against on the basis of sex." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694 (1979). Because "§ 1983 generally supplies a remedy for the vindication of rights secured by federal statutes, rights so secured are deemed presumptively enforceable under § 1983." *Talevski*, 599 U.S. at 184. This presumption is rebutted when Congress has either "expressly forbid § 1983's use" or has "issued the same command implicitly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.* at 186.

Although Title IX lacks "an express private judicial right of action," it does contain "provision[s] that . . . signify that intent." *See id.* 188; *Cannon,* 441 U.S. at 694 ("Not only the words and history of Title IX, but also its subject matter and

underlying purposes, counsel implication of a cause of action in favor of private victims of discrimination."). Title IX creates a right to remedies including monetary damages and equitable relief. *Franklin v. Gwinett County Pub. Schs.*, 503 U.S. 60, 73 (1992) (holding that Congress did not intend to limit the range of remedies available under Title IX).

At the same time, Title IX does not have the robust administrative remedial measures of other statutes found to preclude § 1983 claims. *See, e.g., Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 20 (1981) (Federal Water Pollution Control Act and Marine Protection, Research, and Sanctuaries Act have "comprehensive enforcement mechanisms . . . including citizen-suit provisions" and notice requirements); *Rancho Palos Verdes,* 544 U.S. at 121–27 (Telecommunications Act limited relief to private individuals and provided for expedited judicial review); *Trigg v. Fort Wayne Cmty. Schs.*, 766 F.2d 299, 301 (7th Cir. 1985) (holding that to allow § 1983 Title VII claims would "completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII."); *Levin v. Madigan*, 692 F.3d 607, 620 (7th Cir. 2012) ("[T]he ADEA is the sole remedy for the enforcement of ADEA rights.").

That said, Congress patterned Title IX after Title VI of the Civil Rights Act of 1964. *Cannon*, 441 U.S. at 694–96. The "statutes provide the same administrative mechanism for terminating federal financial support for institutions engaged in prohibited discrimination." *Id.* The Seventh Circuit has foreclosed Title VI as the basis for § 1983 claims because "Title VI provides its own administrative enforcement

8

procedure which would be bypassed by pleading Title VI violations under § 1983." *Alexander v. Chicago Park Dist.*, 773 F.2d 850, 856 (7th Cir. 1985).

Title IX also "offer[s] fewer benefits than those available under § 1983." *See Talevski*, 599 U.S. at 189. The private right of action available under Title IX is not broader than the Government's enforcement authority thereunder. *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 467 n.5 (1999) ("[I]t would be anomalous to assume that Congress intended the implied private right of action to proscribe conduct that Government enforcement may not check.") Title IX liability only extends to grant recipients, such as institutions, and not individuals, such as teachers and administrators. *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019 (7th Cir. 1997). This is a more restrictive judicial remedy that that available under § 1983, which permits individual liability.[3] 42 U.S.C. § 1983. Allowing § 1983 claims to be predicated solely on Title IX violations would skirt Congress's intention that Title IX's remedial scheme "be the exclusive avenue through which a plaintiff may assert [her] claims." *See Talevski*, 599 U.S. at 187.

Strzykalski has not alleged a violation of a constitutional or federal right that can form the basis of her § 1983 claim. Count III is dismissed with prejudice.

### B. Respondeat Superior

In Count IV, Strzykalski alleges that District 161 is liable for McDermott and Goebel's misconduct through respondeat superior. [47] ¶¶ 189–197. Strzykalski

---

[3] While Strzykalski is not attempting to bring a Title IX § 1983 claim against an individual, this discrepancy in the scope of liability evinces Congress's intent to preempt § 1983 claims predicated on Title IX claims.

clarifies that this count is only a request for relief and recognizes that I previously held that respondeat superior is not an independent cause of action, but a theory of liability. [47] at 24 n.1; *Strzykalski*, 2024 WL 580012, at *6. Including this count in her complaint puts District 161 on notice that Strzykalski intends to pursue that theory of liability in the event an individual employee is found liable for her claims and acted within the scope of their employment. As before, I do not dismiss this count. But since it is not a claim for relief, defendants are not obligated to respond to these allegations.

### C. Illinois Whistleblower Act

Section 15(a) prohibits an employer from retaliating "against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(a). To succeed on a § 15(a) claim, Strzykalski must show (1) an adverse employment action by her employer, (2) which was in retaliation for (3) her disclosure in a court, an administrative hearing, before a legislative committee or in any other proceeding (4) of a suspected violation of an Illinois or federal law, rule, or regulation. *See Sweeney v. City of Decatur*, 2017 IL App (4th) 160492, ¶ 15.

Strzykalski alleges that McDermott retaliated against her for the "filing of this lawsuit to seek compensation for her wrongful treatment," by preventing her from being rehired to a similar teaching position that she held before she was demoted for reporting the alleged sexual misconduct. [47] ¶¶ 216–18. McDermott instructed those

10

involved in hiring to interview Strzykalski for the position, but not offer it to her. [47] ¶¶ 219–22. The hired teachers, who had not sued McDermott, had less experience and lower qualifications than Strzykalski. [47] ¶¶ 226–227.

Defendants argue that filing a complaint is not a "disclosure in a court" under the statute. They cite to *Beasley v. City of Granity City*, 442 F.Supp.3d 1066, 1073 (S.D. Ill. 2020), which held that a "plain reading of § 174/15 suggests its protections only extend to *actual* disclosures in a court proceeding, whether that be by live testimony or sworn affidavit." [51] at 6; [58] at 6. But *Beasley* did not involve a complaint filed in court. The plaintiff there told a third party of the alleged unlawful conduct, who then disclosed that information in a court. 442 F.Supp.3d at 1069–70, 1072–73. Such "third-party 'disclosure' [wa]s not the type of behavior that the IWA seeks to protect." *Id.* at 1073. Filing a complaint in a court is an actual disclosure covered by the plain language of the statute. *See, e.g., Caulfield v. Packer Eng'g, Inc.*, 2019 IL App (2d) 170740-U, ¶¶ 68–69 (unreleased for publication in permanent law reports and subject to change until published) (holding that the filing of a shareholder lawsuit was a disclosure in a court).

Defendants also argue that allowing Strzykalski's § 15(a) claim to proceed would not be consistent with the purpose of the IWA and would lead to absurd results. [51] at 7–8. I disagree. According to defendants, if a complaint is a "disclosure" under § 15(a), "an employer that maintains an ongoing relationship with a plaintiff in any civil action related to the plaintiff's employment faces potential whistleblower liability, because by filing the lawsuit, the plaintiff is always asserting they

11

reasonably believed the employer's conduct amount to a violation of law." [51] at 8. This is not necessarily correct. For example, if the allegations in a complaint are frivolous, a plaintiff may not have reasonably believed she was disclosing a violation of law. As defendants recognize, the IWA was created "to protect employees from adverse employment actions in retaliation for reporting or refusing in unlawful conduct by their employers." [51] at 7 (quoting *Huang v. Fluidmesh Networks*, LLC, 2017 WL 3034672, *3 (N.D. Ill. July 18, 2017)). Subjecting employers to potential whistleblower liability if they retaliate against an employee who files a lawsuit against them is exactly what the legislature intended. The risk of liability furthers the purpose of the IWA by encouraging employers to tread carefully before retaliating against their employees for reporting unlawful conduct.

Defendants also argue that "a report of an allegedly improper employment decision by one's employer is not conduct that per se falls within the ambit of the IWA." [51] at 7. They are correct to the extent that the reporter must also have "reasonable cause to believe that the" allegedly improper employment decision was "a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(a). Strzykalski has disclosed such violations. Strzykalski's original complaint alleged that she reported sexual misconduct, which, as discussed in the order on defendants' first motion to dismiss, Strzykalski reasonably believed to be a violation of state law. [20] ¶ 49; *Strzykalski*, 2024 WL 580012, at *5. She also alleged conduct that violated the IWA and Title IX. [20] at 17–25. These are disclosures of conduct that she reasonably believed to be violations of federal and state law. She alleges that after

12

filing the lawsuit with that information, McDermott retaliated against her for making these disclosures. [47] ¶¶ 216–27.

Defendants attempt to add a hurdle to IWA claims, arguing that the reported information must affect the health, safety, or welfare of Illinois residents as a whole. [51] at 7. But defendant's cited cases do not spell this out. [51] at 7 (citing *Larsen v. Provena Hosp.*, 2015 IL App (4th) 140255, ¶ 47 (quoting *Sutherland v. Norfolk Southern Ry. Co.*, 356 Ill.App.3d 620, 627 (2005) (discussing elements of retaliatory discharge claims)); *Palmateer v. Int'l Harvester Co.*, 85 Ill.2d 124, 130 (1981) (same)). Defendants cite to no authority that says Strzykalski need to allege more than that she disclosed information she reasonably suspected to be violations of an Illinois or federal law, rule, or regulation, which she has done.

Strzykalski has adequately stated a § 15(a) whistleblower claim.

## IV. Conclusion

Defendants' motion to dismiss [50] is granted in part, denied in part. The § 1983 claim is dismissed with prejudice, but the § 15(a) whistleblower claim is not dismissed.

ENTER:

                                      Manish S. Shah
                                      United States District Judge

Date: November 6, 2024