UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LISA STRZYKALSKI,

    Plaintiff,

  v.

BOARD OF EDUCATION OF SUMMIT HILL
SCHOOL DISTRICT NO. 161, PRINCIPAL
LAURA C. GOEBEL, and
SUPERINTENDENT PAUL MCDERMOTT,

    Defendants.

No. 23 CV 1284

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lisa Strzykalski was a junior high school teacher when she overheard one of her students complain that she was sexually assaulted by another student. Strzykalski reported the accusation to the Department of Children and Family Services. Strzykalski was then suspended, transferred to another position, and denied rehiring at the junior high. She brings claims against defendants Laura Goebel (the school's principal), Paul McDermott (the district superintendent), and the school district board for retaliation under Title IX and the Illinois Whistleblower Act. Defendants move for summary judgment.

**I.    Legal Standard**

Summary judgment is warranted if there are no genuine disputes of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "'Material facts' are facts that 'might affect the outcome of the suit,' and a dispute as to those facts is 'genuine' if 'the evidence is such that a reasonable [finder of fact]

could return a verdict for the nonmoving party.'" *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The non-moving party is given "the benefit of conflicting evidence and any favorable inferences that might be reasonably drawn from the evidence." *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022).

## II.  Facts

Plaintiff Lisa Strzykalski was a teacher at Summit Hill Junior High School, part of Summit Hill School District 161. [95-2] ¶ 1.[1] Defendant Laura Goebel was principal of Summit Hill and defendant Paul McDermott was district superintendent. [95-2] ¶¶ 2, 4.

In October 2021, one of Strzykalski's students, Student A, said to her classroom partner that another "student sexually assaulted [her]." [95-2] ¶ 7. Strzykalski

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to transcripts, which use the transcript's original page number. When a document has numbered paragraphs, I cite to the paragraph, for example [95-2] ¶ 1.

The facts are largely taken from Strzykalski's response to defendant's Local Rule 56.1 statement, [95-2], and defendant's response to Strzykalski's statement of additional facts, [101], where both the asserted fact and the opposing party's response are set forth in one document. Any fact not properly controverted is admitted. N.D. Ill. Local R. 56.1(e)(3); *see Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); [95-2] ¶¶ 41–44, 48; [101] ¶¶ 3–4, 15–16. I disregard all immaterial facts and legal conclusions. I also ignore facts included in statements or responses that are not supported by the parties' cited evidence. N.D. Ill. Local R. 56.1(d)(2), (e)(3); *see* [95-2] ¶¶ 37–40, 48, 51; [101] ¶¶ 22, 28, 32–33, 39. General objections to how facts are characterized, *see* [95-2] ¶¶ 8, 13, 22, 24–25, 34, 37–38, 49–51, 57; [101] ¶¶ 5–6, 10, 15, 35, are sustained and I omit the characterizations and rely on the underlying evidence when possible. Defendants' hearsay objections are sustained. [101] ¶¶ 8–9, 27. When the parties dispute facts and both rely on admissible evidence, I set forth both sides' facts.

2

testified that the student was looking directly at her when she made this statement. [101] ¶ 1. According to Strzykalski, the student appeared to be stressed and anxious, when she was typically a "very bubbly, happy-go-lucky kid." *Id*. Strzykalski checked in with the student and asked her if she had reported the allegation to anyone else. [95-2] ¶ 8; [101] ¶ 2. The student replied that she had told another teacher, who had her write down the allegations. [101] ¶ 2. Strzykalski did not press the student for more details because she did not want to further upset her. [101] ¶ 3. Strzykalski then joined a group of students including Student A and at some point, commented on religions that do not celebrate Halloween. [95-2] ¶ 12. Student A was called out of the class before the end of the period. [101] ¶ 3.

After class, Strzykalski sought out the other teacher and discussed the student's accusations. [101] ¶ 4. The other teacher says that she told Strzykalski that the student did not use the words "sexual assault," and that the situation relayed was not a sexual assault. [95-2] ¶ 13. Strzykalski says that the other teacher told her that the student used "different verbiage," but did not share the details of the allegations. *Id*. The other teacher told Strzykalski that she was letting the administrative team handle the accusation and that she did not learn any information that would prompt a DCFS report. [95-2] ¶ 24; [101] ¶ 6. She added that if Strzykalski had heard something different, it was her responsibility to report it. [95-2] ¶ 24. The teacher reported to Goebel that the student felt three boys had "sexually harassed" her by clapping and directing inappropriate language to her while they were walking around the school's track. [95-2] ¶ 10. Upon receiving the teacher's report, Goebel realized

3

one of the students involved was her son, and because of this conflict, she directed the associate principal to investigate the matter. [95-2] ¶ 11. The teacher did not tell Strzykalski what she specifically reported. [101] ¶ 7.

The next day, Student A's parents unexpectedly arrived at the school and met with Goebel. [95-2] ¶ 14. They demanded to speak with Strzykalski, saying that she had made inappropriate statements referencing religion. *Id.* They called the comments a "hate crime," and demanded Strzykalski be terminated and Student A be removed from her class. *Id.* Goebel spoke with Student A after her parents left, who verified Strzykalski's comments offended her and said she was not comfortable returning to Strzykalski's class. [95-2] ¶ 15.

Goebel called Strzykalski to her office with a union representative to discuss the alleged comments. [95-2] ¶ 16; [101] ¶ 5. Strzykalski did not deny the conversation with Student A but claimed the statements were taken out of context. [95-2] ¶ 17. Strzykalski repeatedly attempted to raise Student A's allegations of sexual assault, but Goebel responded that was irrelevant to the meeting and that Strzykalski should go to the associate principal with any questions about that situation. [95-2] ¶ 20. Strzykalski says that Goebel told her that she was not allowed to speak Student A about the accusation and complaint. [95-2] ¶ 21; [101] ¶ 5.

Strzykalski drafted an email to a union director that summarized the meeting with Goebel and Student A's accusation. [95-2] ¶ 25. The union director responded via email and text that unless Strzykalski was 100% sure the Department of Children

4

and Family Services had been contacted, she needed to call or could face consequences to her employment and teaching license. [95-2] ¶ 26.

The next morning, Strzykalski reported the assault accusations to DCFS. [95-2] ¶ 27. She told the DCFS representative that Student A reported she had been sexually assaulted and had given information to another staff member who had written it down. *Id.* DCFS requested that the other teacher contact it. *Id.* Strzykalski called the other teacher, who said that she did not feel that making a report was necessary. [95-2] ¶ 28.

In the following days, the associate principal completed her investigation into the student misconduct allegations and issued discipline to three students. [95-2] ¶ 29. Strzykalski was not informed about the outcome of the investigation. [101] ¶ 38.

Goebel and the associate principal completed an investigation into the complaint of Student A's parents and issued a written reprimand to Strzykalski for inappropriate comments. [95-2] ¶ 30. Strzykalski sent Superintendent McDermott a rebuttal to the reprimand, asking for it to be removed from her personnel file and objecting to the characterization of her statements as a "hate crime." [95-2] ¶ 31. In the rebuttal, she disclosed that she contacted DCFS about Student A's accusation. *Id.* McDermott determined that the reprimand should remain in Strzykalski's personnel file. [95-2] ¶ 33.

In December 2021, Strzykalski met with a union director and another teacher to discuss the discipline Goebel issued against her and others. [95-2] ¶ 34. The union director asked Strzykalski what became of the DCFS report she made. [95-2] ¶ 35.

Strzykalski did not know, so the director told her to contact DCFS for an update. *Id.* When Strzykalski called DCFS, DCFS told her that it had no record of her earlier report. [95-2] ¶ 36. Strzykalski again told DCFS of Student A's accusation. [95-2] ¶ 37. DCFS investigated the report. [95-2] ¶ 37.

After the DCFS investigation, McDermott investigated Strzykalski's compliance with the Board of Education's policy on mandated reporting of suspected child abuse or neglect. [95-2] ¶¶ 38–39. McDermott found that Strzykalski's account of what she knew changed in interviews. [95-2] ¶ 40. He concluded that Strzykalski had not acted reasonably under the circumstances and had not complied with Board policy on mandated reporting. [95-2] ¶ 41. He could not reconcile that Strzykalski, and the other teacher had responded to the situation so differently. *Id.*

McDermott recommended that the Board suspend Strzykalski for five days. [95-2] ¶ 45. In April 2022, the Board issued Strzykalski a notice to remedy and a one-day suspension. [92-5] ¶ 47. The notice stated that Strzykalski "engaged in unprofessional conduct by filing DCFS reports without a reasonable basis against the son of a superior" and "failed to follow Board Policy with respect to reporting a matter to DCFS." *Id.*; [79-8] at 1. After the Board issued the discipline, Goebel was permitted to appear in a closed session and shared a statement she prepared regarding the impact the situation had on her and her family. [95-2] ¶ 48.

In July 2022, Strzykalski was transferred to a position that was split across four elementary schools, which increased her travel time. [95-2] ¶ 53; [101] ¶¶ 30–33. Strzykalski's end time also changed to an hour later which affected her childcare

6

options and costs. [101] ¶¶ 32, 34–35. Strzykalski also contends that she lost earlier paid stipends because she no longer held seniority. [101] ¶ 35. Strzykalski says she didn't reapply for these stipends on being transferred because the contract limit had already been hit. *Id.*

In Spring 2024, Strzykalski applied for a position open at Summit Hill Junior High School. [95-2] ¶ 55. McDermott delegated the hiring process to the school's technology team, which did not include Goebel. *Id.* Another employee was hired because his qualifications made him a better candidate for the position. *Id.*

Strzykalski brought this case alleging Title IX, Illinois Whistleblower Act, "*Monell* Liability," and "respondeat superior" claims against Goebel, McDermott, and District 161. [1], [20]. After two motions to dismiss, Strzykalski's Title IX and Illinois Whistleblower Act claims remain. [37], [73]. Defendants move for summary judgment. [78].

### III. Analysis

#### A. Title IX

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX contains an implied private right of action encompassing retaliation claims. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005). To establish a prima facie claim, Strzykalski must show: (1) she engaged in a statutorily protected activity; (2) defendants took a materially adverse action against her; and (3) but-for-causation between the two. *See Burton v. Bd. of Regents of Univ.*

7

*of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017). Strzykalski also seeks damages under the Illinois Civil Rights Remedies Restoration Act based on her Title IX claim. *See* 775 ILCS 60/15, 20.

### 1. Sufficient Connection

Defendants argue that Strzykalski is bringing a third-party retaliation claim and must show that she had a sufficient connection to Student A. [85] at 8–9. In doing so, defendants misread that law. A third-party reprisal claim arises when one individual reports sex discrimination, but a different person suffers the retaliation. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 174–75 (2011). For the second person to succeed on a Title IX claim, they must show that they were sufficiently connected to the reporter such that retaliation against them would deter a reasonable person with the same relationship from reporting. *Id.*

Defendants rely heavily on *Conviser v. DePaul University*, 532 F.Supp.3d 581 (N.D. Ill. 2021), which mistakenly applied this requirement to a reporting plaintiff. On a second motion to dismiss, the court recognized that the appropriate question for a reporter is whether Title IX protects the sort of interest the would-be plaintiff seeks to advance, not whether the reporter had a sufficiently close relationship with the victim of sex discrimination. *See Conviser v. DePaul Univ.*, 649 F.Supp.3d 686, 696 (N.D. Ill. 2023).

The association test would only apply here if Student A (or another person aware of the allegations) had reported the sexual assault, and then Strzykalski suffered repercussions for the reporter's protected activity. *See Thompson*, 562 U.S.

8

at 174–75. But Strzykalski's theory is that she herself engaged in the protected activity and then suffered the retaliation.

### 2. *Statutorily Protected Activity*

Defendants argue that Strzykalski did not engage in a statutorily protected activity because she did not file a complaint via the District's Title IX process. [85] at 10. Protected activity under Title IX involves "some step in opposition to a form of discrimination that the statute prohibits." *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011).[2]

Title IX prohibits discrimination on the basis of sex. 20 U.S.C. § 1681(a). Ignoring gendered student on student violence can be considered sex discrimination. *Davis v. Monroe Cnty. Bd. of Ed.*, 526 U.S. 629, 642 (1999) (holding that Title IX private right of action encompasses intentional sex discrimination in the form of a recipient's deliberate indifference to sexual harassment of a student by another). Strzykalski says that she tried to raise the sexual assault allegations with Goebel multiple times but was rebuffed. [101] ¶ 37. Reporting the allegations to outside authorities counts as a "step in opposition to a form of discrimination that the statute prohibits." *See O'Leary*, 657 F.3d at 631.

For example, in the Title VII context, courts have found that making a police report of workplace discrimination is a protected activity. *Alamo v. Bliss*, 864 F.3d 541, 555 (7th Cir. 2017); *Worth v. Tyer*, 276 F.3d 249, 265 (7th Cir. 2001) (concluding

---

[2] *O'Leary* involved a Title VII retaliation claim, but the same analysis applies under Title IX. *See Burton*, 851 F.3d at 695.

9

that plaintiff's decision to file a police report "constitute[d] protected activity under Title VII"). The ability to report what one views as sex discrimination in the context of schools would similarly be protected activity under Title IX. *Cf.* 42 U.S.C. § 2000e-3(a) (listing protected activities, including "oppos[ing] any practice made an unlawful employment practice" by Title VII).

Defendants also argue that Strzykalski did not intend to be Student A's advocate or have Title IX in mind when she made her report. [85] at 10. But defendants provide no support for the proposition that a reporter must have specific intentions in mind when reporting. The reporter must only be taking a step in opposition to a form of discrimination the statute prohibits—there is no requirement that they know the conduct reported violated Title IX. *See O'Leary*, 657 F.3d at 631.

Strzykalski's report of the alleged sexual assault to DCFS was a protected activity under Title IX.

### 3. Materially Adverse Action

Strzykalski argues that the one-day suspension, unwanted lateral transfer, and denial of hiring were materially adverse to her. [97] at 12; [95-2] ¶¶ 47, 51, 55; [101] ¶¶ 30–31. "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Burton*, 851 F.3d at 696. An adverse action is one that "harm[s] . . . an identifiable term or condition of employment." *Muldrow v. St. Louis*, 601 U.S. 346, 354–55 (2024). The harm need not be "significant," "serious or substantial." *Id.* at 355.

Strzykalski presents evidence that the one-day suspension and the unwanted transfer harmed identifiable terms and conditions of her employment. The

10

suspension led to a day without pay, and the job reassignment increased Strzykalski's travel time and interfered with her childcare due to a later end time. [95-2] ¶¶ 47, 53; [101] ¶¶ 33–34, 35. Such actions could well dissuade a reasonable worker from speaking up. *See, e.g., Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1337 (7th Cir. 2024) (finding transfer to less desirable shift may constitute an adverse employment action). Similarly, failing to hire is a materially adverse employment action. *See Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017). These actions harmed the conditions of Strzykalski's employment and thus were adverse employment actions. Defendants' argument that these were minor inconveniences is unavailing when the harm need not be "significant." *See Muldrow*, 601 U.S. at 355. At summary judgment, where Strzykalski is entitled to favorable inferences, these consequences could be harmful.

### 4. *Causation*

Strzykalski must present enough evidence for a reasonable factfinder to conclude that the protected activities were the but-for cause of the adverse actions. *See Burton*, 851 F.3d at 697. Strzykalski does not present direct evidence of causation, so must rely on circumstantial evidence like "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Murphy v. Caterpillar Inc.*, No. 24-1517, 2025 WL 1702982, at *12 (7th Cir. June 18, 2025).

Strzykalski argues that suspicious timing and limited evidence of Goebel's animus shows that defendants' proffered reasons were pretext. [97] at 12. To the extent the record raises an inference that Goebel held ill will against Strzykalski,

11

that does not support an inference that McDermott or the Board held retaliatory motives when it suspended her, transferred her, or denied her application. The evidence indicates that Goebel was not involved in these adverse actions. [95-2] ¶¶ 48 (Goebel did not speak to the Board until after the discipline was determined); 52 (Goebel did not ask McDermott to transfer Strzykalski); 55 (Goebel was not part of the hiring committee). Strzykalski offers no evidence of remarks, conduct, or patterns from McDermott or board members that would support an inference of retaliatory motive. *See Murphy*, 2025 WL 1702982, at *13.

As for timing, Strzykalski's argument is weak. Her transfer occurred months after the investigation and suspension, and the hiring denial occurred years later. [95-2] ¶¶ 51, 55. Strzykalski does not present evidence that bridges the significant time gap between her report and these actions. *See Leonard v. Eastern Ill. Univ.*, 606 F.3d 428, 432 (7th Cir. 2010) (affirming summary judgment; six-month gap between complaint of discrimination and adverse employment action was "too long to infer a link between the two"); *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (affirming summary judgment; seven–week interval without more was not suspicious). While the gap does not preclude Strzykalski's transfer and failure to hire claims as a matter of law, it does substantially weaken them. *See Murphy*, 2025 WL 1702982, at *12–13. Suspicious timing, alone, is "generally insufficient to establish a retaliatory motivation." *Vavra v. Honeywell Int'l, Inc.*, 106 F.4th 702, 706 (7th Cir. 2024). And "any inference of causation supported by temporal proximity may be

12

negated by circumstances providing an alternative explanation for the challenged action." *Id.*

Defendants have presented non-retaliatory reasons for the discipline and suspension, the transfer, and the denial of hiring. The one-day suspension was not because Strzykalski filed a DCFS report, but because she did so without cause and, even if she had cause, she did not follow Board policy in making her report. [79-8] at 1. McDermott transferred her because of district restructuring and no qualified teacher applied to the position, while Strzykalski was equipped to start a new program. [95-2] ¶ 51. And she was not hired for the technology coach job because another candidate was more qualified. [95-2] ¶ 55.

Thus, "the true question is whether the proffered reasons were pretext for retaliation." *Burton*, 851 F.3d at 697. Strzykalski presents no evidence to rebut defendants' non-retaliatory reasons. Strzykalski argues that defendants were wrong in finding that she did not have cause to file a report. [97] at 12. But even if defendants erred in that finding, pretext "involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *See Burton*, 851 F.3d at 698. Further, defendants also suspended Strzykalski because, even if she did have cause to report, she did not follow Board policy to immediately do so. [79-8] at 1. Strzykalski does nothing to rebut this non-retaliatory reason for her suspension.

There is no evidence on which a reasonable factfinder could determine that the filing of the DCFS report itself was the but-for cause of the adverse actions.

13

Defendants are entitled to summary judgment on Strzykalski's Title IX and her derivative Illinois Civil Rights Remedies Restoration Act claims.

### B. Illinois Whistleblower Act

Defendants are entitled to summary judgment on Strzykalski's Illinois Whistleblower Act claims under sections 10 and 15(a) as she no longer pursues them. [97] at 13, 13 fn.1.

Strzykalski maintains her claim under Section 15(b), which prohibits an employer from "retaliat[ing] against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule or regulation." 740 ILCS 174/15(b). To succeed on a § 15(b) claim, Strzykalski must show (1) an adverse employment action by her employer, (2) which was in retaliation for (3) her disclosure to a government or law enforcement agency (4) of a suspected violation of an Illinois or federal law, rule, or regulation. *Sweeney v. City of Decatur*, 2017 IL App (4th) 160492, ¶ 15 (citing *Taylor v. Bd. of Educ. of the City of Chicago*, 2014 IL App (1st) 123744, ¶ 52).

Defendants do not dispute that Strzykalski made a disclosure to a government agency but argue that Strzykalski has presented no evidence that she believed that her report to DCFS disclosed a violation of the law. [85] at 12. According to them, Student A's singular statement that she was sexually assaulted, paired with the other teacher's statement that she did not believe a sexual assault had occurred and no DCFS report was needed, shows that Strzykalski had no objective facts or other reasonable basis to believe that she was disclosing a violation of the law. *Id.*

14

Just because another teacher was told something different by Student A does not mean that Strzykalski did not have a good faith basis to contact DCFS. Strzykalski presents evidence that she was never informed what Student A told the other teacher or the results of the administration's investigation into the allegations. [101] ¶¶ 36, 38. A reasonable factfinder could find that Student A's statement supported Strzykalski's belief. The statement that another student "sexually assaulted me" is a serious accusation. Sexual assault is criminalized under Illinois state law. 720 ILCS 5/11-1.20, 1.30. Sexual harassment in schools is also considered a civil rights violation under the Illinois Human Rights Act. 775 ILCS 5/5A-102. Strzykalski has presented a triable issue of fact as to whether she reasonably believed she was reporting a legal violation when she called DCFS.

Defendants also argue that the alleged retaliatory actions were not "materially adverse." [85] at 12. As discussed above, the suspension, lateral transfer, and denial of rehiring were adverse employment actions. But like her Title IX claims, Strzykalski has not shown that these actions were "in retaliation for" her report to DCFS, rather than because of doing so without cause and failing to comply with District policy, District restricting, and a more qualified candidate. The record would not permit a reasonable factfinder to conclude that retaliatory motive caused the adverse actions. Defendants are entitled to summary judgment on Strzykalski's IWA claim.

## IV. Conclusion

Defendants' motion for summary judgment, [78], is granted. Enter judgment in favor of defendants and terminate civil case.

ENTER:

                                                        Manish S. Shah
                                                        United States District Judge

Date: June 25, 2025